Entered: September 29th, 2025
Signed: September 29th, 2025



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | |
|---|---|
| In re:<br><br>KATHERINE E. WYATT-BURROWS,<br><br>Debtor. | CASE NO. 21-16852-NVA<br><br>CHAPTER 7 |

### MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING DEBTOR'S MOTION TO AVOID INCHOATE JUDICIAL LIENS

Pending before the Court is the *Debtor's Motion to Avoid Inchoate Judicial Liens for Impairment of Exemptions Pursuant to 11 U.S.C. § 522(f)* (the "Motion to Avoid Liens"). [ECF No. 93]. In the Motion to Avoid Liens, the debtor, Katherine Wyatt-Burrows, seeks to avoid the liens held by Linkus Investments, LLC ("Linkus"), a creditor in this bankruptcy case, against two distinct funds: (1) $50,000 comprised of pre-petition alimony owed to Ms. Wyatt-Burrows by her ex-husband, Raymond Burrows, held in the registry of the Court (the "Registry Funds"), and (2) $31,850 comprised of post-petition alimony owed to Ms. Wyatt-Burrows by Mr. Burrows, held in the escrow account of Ms. Wyatt-Burrows's counsel, Tydings & Rosenberg LLP ("Tydings") (the "Escrowed Funds").  Ms. Wyatt-Burrows also asserts that, because the trustee has abandoned all assets without administering them and she has received a discharge, any non-exempt portion of the Registry Funds and the Escrowed Funds should be returned to her.

Linkus filed a response in opposition (the "Opposition") in which it generally concedes that Ms. Wyatt-Burrows is entitled to avoid Linkus's liens to the extent they impair her statutory right to claim exemptions, but challenges the calculations and amounts Ms. Wyatt-Burrows seeks to avoid, as well as her assertion that the non-exempt portions should also be allotted to her. [ECF No. 94]. Ms. Wyatt-Burrows then filed a reply (the "Reply") addressing Linkus's arguments and, two days before the hearing to consider the parties' papers, an amended Schedule C in which she effectively increases the exemptions claimed against the Registry Funds by abandoning exemptions previously claimed on other property and now claiming those exemptions on the Registry Funds. [ECF Nos. 97, 99]. This prompted a further brief by Linkus, in which it objected to the timeliness of the amended Schedule C as, among other things, prejudicial and noted that Ms. Wyatt-Burrows is prohibited from asserting the new exemptions under state law. [ECF No. 100].

The Court conducted an evidentiary hearing on these papers, along with related cross-motions for summary judgment in the adversary proceeding styled as *Katherine E. Wyatt-Burrows v. Linkus Investments, LLC*, Case No. 23-00245 (Bankr. D. Md. October 8, 2023) (the "Linkus Adversary Proceeding"). For the reasons that follow, the Motion to Avoid Liens will be granted on the terms set forth herein.

**Relevant Background**

Linkus holds a $1,228,868.09 judgment against Ms. Wyatt-Burrows, entered in the Circuit Court for Harford County (the "State Court") on April 11, 2019 (the "Judgment").[1] *See* Claim 13-1. In the Proof of Claim filed in Ms. Wyatt-Burrows's bankruptcy case, Linkus alleges that the

---

[1] Ms. Wyatt-Burrows and Mr. Burrows personally guaranteed a loan extended by Xenith Bank to business entities jointly owned by Ms. Wyatt-Burrows and Mr. Burrows. The business entities defaulted on their objections under that loan, and on April 11, 2019, a confessed judgment was entered by the State Court in favor of Xenith Bank and against the business entities, Ms. Wyatt-Burrows, and Mr. Burrows in the amount of $1,228,868.09.

2

Judgment is partially secured by liens arising from writs of garnishment served on various non-debtor parties that may be holding property of Ms. Wyatt-Burrows or may owe debts to Ms. Wyatt-Burrows. *Id*.

The Registry Funds consist of $50,000 in **pre-petition alimony** owed to Ms. Wyatt-Burrows by Mr. Burrows.[2] Mr. Burrows had been the subject of one of the garnishment writs issued by Linkus, where Linkus sought to capture monies owed to Ms. Wyatt-Burrows. Mr. Burrows deposited those alimony funds into the Court's registry and filed an Interpleader Complaint in the case styled as *Raymond H. Burrows, III v. Katherine E. Wyatt-Burrows, et al*, Case No. 24-00026 (Bankr. D. Md. January 26, 2024) (the "Burrows Interpleader") for the purpose of determining which party was entitled to those funds.

The Escrowed Funds consist of **post-petition alimony** owed to Ms. Wyatt-Burrows by Mr. Burrows. An order by Chief Bankruptcy Judge David E. Rice entered in Mr. Burrow's bankruptcy case (the "Burrows Alimony Order") on January 26, 2021 established the Escrowed Funds; the Burrows Alimony Order (1) awarded Ms. Wyatt-Burrows a $50,750 administrative expense claim for post-petition alimony due and owing by Mr. Burrows; (2) allowed for adjustment of that claim consistent with any final order in the State Court resulting from Mr. Burrows's attempt to modify his post-petition alimony obligations to Ms. Wyatt-Burrows; (3) directed Mr. Burrows to make monthly payments towards the administrative expense claim to Tydings's escrow account; and (4) provided that the Escrowed Funds would be disbursed pursuant to a final decision by the State Court. *Order Granting Motion of Katherine Wyatt-Burrows for Allowance and Payment of*

---

[2] The parties have a long history before this Court that has been exhaustively detailed in prior orders entered in the Debtor's bankruptcy case and the four associated adversary proceedings. *See generally In re Katherine E. Wyatt-Burrows,* Case No. 21-16852 (Bankr. D. Md. October 30, 2021); *Linkus Investments, LLC v. Katherine E. Wyatt-Burrows, et al*, Case No. 21-00263 (Bankr. D. Md. December 21, 2021); *Katherine E. Wyatt-Burrows v. Raymond H. Burrows, III*, Case No. 23-00178 (Bankr. D. Md. July 18, 2023); *Katherine E. Wyatt-Burrows v. Linkus Investments, LLC*, Case No. 23-00245 (Bankr. D. Md. October 8, 2023); *Raymond H. Burrows, III v. Katherine E. Wyatt-Burrows, et al*, Case No. 24-00026 (Bankr. D. Md. January 26, 2024).

*Administrative Expense Claim* [ECF No. 199] *In re Raymond H. Burrows, III*, Case No. 19-23255 (Bankr. D. Md. October 3, 2019). The State Court never rendered a final decision on Mr. Burrows's request to modify his post-petition alimony obligations; instead, the parties settled the dispute concerning Mr. Burrows's post-petition alimony obligations on March 29, 2023. Pursuant to that settlement, Mr. Burrows received $13,650 of the Escrowed Funds and Ms. Wyatt-Burrows received $31,850 of the Escrowed Funds.

In both the Burrows Interpleader and the Linkus Adversary Proceeding, the Court was asked to address, among other things, whether Linkus holds a lien against the Registry Funds and the Escrowed Funds, respectively, by virtue of serving a writ of garnishment on Mr. Burrows and Tydings, respectively. In resolving separate cross-motions for summary judgment in both cases, the Court concluded that Linkus ***does have*** an inchoate lien on the Registry Funds and the Escrowed Funds. The question now posed here is whether, and to what extent, Ms. Wyatt-Burrows may avoid those liens as impairing exemptions she has claimed under section 522(f) of the Bankruptcy Code.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Under 28 U.S.C. § 157(a) and its Local Rule 402, the United States District Court for the District of Maryland has referred this case to the Court. This matter is a statutorily core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2). The Court has constitutional authority to enter final orders in this matter.

## Legal Standards

Exemptions are governed by section 522 of the Bankruptcy Code. Section 522 permits states to "opt out" of the federal exemptions provided under the Bankruptcy Code, and limits

citizens to use of the exemptions available under state law and other federal non-bankruptcy law. Maryland has opted out of the federal bankruptcy exemptions:

> Section 522 … allows a debtor to exempt certain property from property of the bankruptcy estate. 11 U.S.C. § 522(d). Maryland has "opted out" of the alternative federal exemptions contained in 11 U.S.C. § 522(d). MD. CODE ANN., CTS & JUD. PROC. § 11–504(g) (Supp. 1999). An individual debtor in this district is entitled to claim those exemptions available under Maryland law.

*In re Selby*, 254 B.R. 128, 130 (Bankr. D. Md. 2000). Before a debtor can assert an exemption in bankruptcy, the debtor must have a valid state law exemption. *In re Gordon*, 199 B.R. 7, 10 (Bankr. D. Md. 1996); *Zimmerman v. Morgan,* 689 F.2d 471 (4th Cir. 1982). "Maryland exemptions are to be construed liberally to effect the purpose for which they were enacted." *In re Gibson*, 300 B.R. 866, 869 (D. Md. 2003); *see also In re Walker-Lightfoot*, 2024 WL 1316078, at *3 (Bankr. D. Md. Mar. 27, 2024) ("Without proper exemptions, a debtor may not have adequate financial stability after bankruptcy and may experience more, rather than less, financial distress. For those and other reasons, exemptions are generally construed in favor of the debtor . . .").

Under Maryland law, "[m]oney payable or paid in accordance with an agreement or court order for alimony" is exempt from judgment "to the same extent that wages are exempt from attachment under section 15-601.1(b)(1)(i) of the Commercial Law Article." Md. Code Ann., Cts. & Jud. Proc. § 11-504(b)(8). Section 15-601.1(b)(1)(i) states that "75 percent of the disposable wages due" are exempt from attachment. Md. Code Ann., Com. Law § 15-601.1.

Subsection (f) provides in relevant part that a debtor may avoid a judicial lien "to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section." 11 U.S.C. § 522(f).

**Analysis and Discussion**

"Exemptions generally are determined as of the petition date. Pursuant to § 522(b)(3), a Maryland debtor is entitled to exempt property that would be exempt under state or local law that is applicable on the 'date of the filing of the petition.'" *In re Massenburg*, No. 12-27073 TJC, 2019 WL 2521242, at *3 (Bankr. D. Md. June 18, 2019); *In re Lantz*, 446 B.R. 850, 858 (Bankr. N.D. Ill. 2011); *In re Armenakis*, 406 B.R. 589, 605 (Bankr. S.D.N.Y. 2009).

In her eleventh-hour amended Schedule C (the "Second Amended Schedule C"), Ms. Wyatt-Burrows claimed the following exemptions pursuant to various subsections of section 11-504 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code:

| Registry Funds | Escrowed Funds |
|---|---|
| 75% pursuant to (b)(7) | 75% pursuant to (b)(7) |
| $5,500 pursuant to (b)(5) | $480 pursuant to (b)(5) |
| $5,000 pursuant to (f)(1)(i)(1) | |

[ECF No. 99].[3] It is undisputed that the Registry Funds and the Escrowed Funds are comprised of alimony that Mr. Burrows owed to Ms. Wyatt-Burrows. It is also undisputed that Ms. Wyatt-Burrows is entitled to exempt 75% of any alimony award pursuant to section 11-504(b)(8) (the "Alimony Exemption"). This results in an exemption of $37,500 in the Registry Funds, subject to the Court's further analysis below. Three issues remain: (1) what value to assign to the Escrowed Funds to calculate the 75% exemption (since the post-petition settlement agreement reduced Ms.

---

[3] Section 11-504 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code has been amended since Ms. Wyatt-Burrows filed for bankruptcy. Although Ms. Wyatt-Burrows's schedules cite to section 11-504(b)(7), section 11-504(b)(8) is the subsection relevant to agreements and court orders for alimony. Further, the "catch-all" subsection allowing an exemption of up to $6,000 in cash or the equivalent value thereof previously found in section 11-504(b)(5) is now found in section 11-504(b)(6).

Wyatt-Burrows's entitlement from $45,500 to $31,850); (2) whether Ms. Wyatt-Burrows may further amend Schedule C on the eve of the hearing on these issues; and (3) whether Ms. Wyatt-Burrows may claim the non-alimony exemptions.

Valuing the Escrowed Funds

At the time of their creation by Chief Judge Rice's Order in Mr. Burrows's bankruptcy case and before Ms. Wyatt-Burrows had filed her own bankruptcy petition, the value of the Escrowed Funds was $45,500. In her original Schedule C filed with her bankruptcy petition on October 30, 2021, Ms. Wyatt-Burrows assigned a value to the Escrowed Funds of $45,500 and asserted various state law exemptions to the Escrowed Funds. [ECF No. 1]. Thus, on the petition date, property of the estate in the instant bankruptcy case was comprised of, among other things, the Escrowed Funds (valued at $45,500), subject to Ms. Wyatt-Burrows's applicable exemptions.

Before a final resolution on the disposition of the Escrowed Funds was made on Mr. Burrows's request in State Court to modify his post-petition alimony obligations, the parties settled the dispute. Pursuant to that settlement, the parties agreed that Mr. Burrows was entitled to $13,650 of the Escrowed Funds and Ms. Wyatt-Burrows was entitled to $31,850 of the Escrowed Funds. Although the Escrowed Funds were created pursuant to an Order entered in Mr. Burrows's bankruptcy case, Ms. Wyatt-Burrows had claimed an interest in the Escrowed Funds in the instant bankruptcy case, meaning that the Escrowed Funds were property of the estate in ***this*** bankruptcy case.[4] And while the parties' settlement was blessed by Chief Judge Rice in Mr. Burrows's bankruptcy case, the parties did not seek or obtain this Court's approval for that settlement in Ms.

---

[4] In identifying the Escrowed Funds on her Schedule A/B, Ms. Wyatt-Burrows did not qualify her right or interest in the Escrowed Funds as contingent or otherwise encumbered; she included the entire value of $45,500 when asked to identify the "[c]urrent value of the portion you own." [ECF No. 1]. This cuts against any argument raised here, and in the related litigation, that Ms. Wyatt-Burrows's interest in the Escrowed Funds when she filed her petition was anything less than the full $45,500.

Wyatt-Burrows's bankruptcy case. The effect of the settlement was to remove Ms. Wyatt-Burrows's interest in $13,650 from her estate in the instant bankruptcy case without notice or approval by this Court.

Ms. Wyatt-Burrows argues that, for purposes of applying the Alimony Exemption, the Court should value the Escrowed Funds at $45,500, resulting in an exemption of $34,125 (representing 75% of $45,500), and then apply that exemption to the remaining balance of the Escrowed Funds of $31,850. Because the exemption exceeds the remaining balance, nothing remains to secure Linkus's lien. Put another way, Ms. Wyatt-Burrows takes the position that the $13,650 portion of the Escrowed Funds that was paid to Mr. Burrows came from the ***non-exempt*** portion of the Escrowed Funds, and that her exempt portion remains untouched. The practical effect of this calculation is to fully exempt the reduced amount remaining in the Escrowed Funds post-settlement and avoid Linkus's lien on the Escrowed Funds in its entirety.

Linkus argues that this result is inequitable, noting that Ms. Wyatt-Burrows had no authority to dispose of property of the estate (her interest in the $13,650) without notice and approval in this case. The equitable result, Linkus postulates, is to conduct the exemption analysis on the $31,850 remaining in the Escrowed Funds, which would result in an exemption of $23,887.50 (75% of $31,850) and leave $7,962.50 to secure Linkus's lien.

The Court agrees that Ms. Wyatt-Burrows's proposal is inequitable. The Court is also concerned that property of the estate in this case was disposed of without notice or approval. The Court recognizes, however, that the settlement agreement was consummated two years ago and approved by another judge of this court in another case, and that settlement resolved a dispute over funds placed in the registry of the Court pursuant to an Order entered in that case. This judge will not disturb that arrangement. Nevertheless, actions have consequences.

>A debtor's exemptions have long been fixed at "the date of the filing of the [bankruptcy] petition." *White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *Wolfe v. Jacobson (In re Jacobson )*, 676 F.3d 1193, 1199 (9th Cir. 2012) ("Under the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition."). This rule determines not only what exemptions a debtor may claim, it also fixes the value that a debtor is entitled to claim in her exemptions. *Gebhart v. Gaughan (In re Gebhart )*, 621 F.3d 1206, 1211 (9th Cir. 2010) (noting the well-settled holding in this circuit "that what is frozen as of the date of filing the petition is the value of the debtor's exemption, not the fair market value of the property claimed as exempt"); *see also Hyman v. Plotkin (In re Hyman )*, 967 F.2d 1316, 1321 (9th Cir. 1992) ("Were we to accept the Hymans' argument that they're entitled to post-filing appreciation, we would also have to hold that a debtor is subject to post-filing depreciation, which would give debtors in falling property markets less than the $45,000 guaranteed them by state law. Nothing in the bankruptcy law compels (or even suggests) such a drastic interference with the operation of the state homestead exemption statute. In fact, our caselaw strongly suggests the opposite result." (emphasis in original) ).

*Wilson v. Rigby*, 909 F.3d 306, 308–09 (9th Cir. 2018). "Under the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition." *In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012).

The value of the Escrowed Funds on the petition date was $45,500. Ms. Wyatt-Burrows is entitled to an exemption of 75% of that amount, which results in an exempt amount of $34,125. This exempt amount is property that the chapter 7 trustee could not administer in this case and against which Linkus's lien could be avoided, pursuant to section 522(f). To the extent Ms. Wyatt-Burrows decided to settle the post-petition alimony dispute with Mr. Burrows, she did so from these exempt funds over which neither the trustee nor Linkus had any claim, and not generally from the full balance of the Escrowed Funds that included non-exempt monies. In other words, the $13,650 which Mr. Burrows received pursuant to the settlement agreement is deducted ***not*** from the original $45,500 balance of the Escrowed Funds, but instead from the $34,125 exempt portion of the Escrowed Funds. This leaves $20,475 as exempt and $11,375 as non-exempt

(totaling $31,850, the current balance of the Escrowed Funds). Accordingly, Ms. Wyatt-Burrows is entitled to avoid Linkus's lien to the extent of $20,475, pursuant to the Alimony Exemption.

<u>Entitlement to Eleventh-Hour Amendment of Schedule C</u>

Linkus objects to Ms. Wyatt-Burrows's eleventh-hour amendment of her exemptions as prejudicial, given the posture of this bankruptcy case: the trustee made a decision to abandon assets based, in part, on the pre-amendment exemptions, and Ms. Wyatt-Burrows has received a discharge based, in part, on the trustee's decision. Linkus also notes that, under Maryland law, Ms. Wyatt-Burrows is not entitled to claim exemptions in her Second Amended Schedule C beyond those permitted by the Alimony Exemption because she failed to comply with the applicable procedure to release the Registry Funds and the Escrowed Funds for attachment.

Rule 1009 of the Federal Rules of Bankruptcy Procedure permits amendment of "a voluntary petition, list, schedule, or statement at any time before the case is closed." Fed. R. Bankr. P. 1009(a)(1). Though there is no binding case law in this Circuit, other courts have concluded that the liberality of amendment under Rule 1009 must be tempered in cases of either a debtor's bad faith or prejudice to creditors. *See, e.g.*, *In re Snyder*, 279 B.R. 1, 6 (B.A.P. 1st Cir. 2002); *In re Calder*, 973 F.2d 862, 867 (10th Cir. 1992); *In re Williamson*, 804 F.2d 1355, 1358 (5th Cir.1986); *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984); *In re Doan*, 672 F.2d 831, 833 (11th Cir.1982). Bankruptcy Judge James Schneider endorsed this approach in this court in *In re Butcher*, 189 B.R. 357, 374 (Bankr. D. Md. 1995), *subsequently aff'd*, 125 F.3d 238 (4th Cir. 1997) and *In re Mueller*, 256 B.R. 445, 451 (Bankr. D. Md. 2000).

The Second Amended Schedule C reallocates exemptions that were previously claimed from other property to the Registry Funds, in an effort to maximize the avoidable portion of Linkus's lien . [ECF No. 99]. As to the Registry Funds, Ms. Wyatt-Burrows now seeks to exempt

an additional $5,500 pursuant to section 11-504(b)(6) (the "Catch-All Exemption") and $5,000 pursuant to section 11-504(f)(1)(i)(1)(the "Personal Property Exemption"), both of which were previously claimed against other property. *Id.* There appears to be no change to the claimed exemptions as to the Escrowed Funds from the previously-filed Schedule C. *Id.*

When the Motion to Avoid Lien was filed on *April 23, 2025*, the exemptions claimed by Ms. Wyatt-Burrows were governed by an amended Schedule C filed on *February 17, 2022* (the "First Amended Schedule C") and a supplemental Schedule C filed on *January 24, 2024* (the "Supplemental Schedule C"). [ECF Nos. 34, 68]. The First Amended Schedule C does not list the Registry Funds, applies the entirety of the Personal Property Exemption to "engagement ring and miscellaneous items," and applies the Alimony Exemption and $480 of the Catch-All Exemption to the Escrowed Funds. [ECF No. 34]. The Supplemental Schedule C adds the Registry Funds to Ms. Wyatt-Burrows's bankruptcy case in both property and exemptions; there, Ms. Wyatt-Burrows applies *only* the Alimony Exemption to the Registry Funds.

The timing of the filing of the Second Amended Schedule C—two days before the hearing, *three years* after the First Amended Schedule C, *more than one year* after the Supplemental Schedule C, and *one year* after the trustee abandoned estate assets—is strongly suggestive of bad faith. The attempted reallocation of exemptions following the trustee's abandonment of assets would leave $10,500 that could have been administered by the trustee (if Ms. Wyatt-Burrows had made the amendment during the trustee's administration of the case) for the benefit of creditors. By waiting until long after the trustee had administered the case, Ms. Wyatt-Burrows obtained the benefit of exempting valuable property the trustee could have administered and that she now seeks to "un-exempt" so she can double-dip by reallocating exemptions to other property. That this was

11

done forty-eight hours before the hearing on the Motion to Avoid Liens strongly suggests subterfuge and bad faith. Ms. Wyatt-Burrows cannot have her cake and eat it, too.

Even if the eleventh-hour attempt to amend Schedule C was the result of an honest oversight, the Court nevertheless finds that permitting such an amendment would be prejudicial. As noted *supra*, the parties have been litigating various issues related to the Registry Funds and the Escrowed Funds for years. During that time, Linkus understandably believed that Ms. Wyatt-Burrows's exemptions were limited to those claimed in the First Amended Schedule C and the Supplemental Schedule C and made decisions about the value proposition of continuing its litigation based, in part, on that understanding. Indeed, even the Court relied on Ms. Wyatt-Burrows's representations in the First Amended Schedule C and the Supplemental Schedule C when preparing to hear the Motion to Avoid Liens. There is no doubt in the Court's mind that permitting Ms. Wyatt-Burrows to proceed on the Second Amended Schedule C is prejudicial.

For these reasons, the Court will disallow the Second Amended Schedule C.

<u>Entitlement to the Non-Alimony Exemptions</u>

The Catch-All Exemption provides that the following can be exempted:

> Cash or property of any kind equivalent in value to $6,000 is exempt, ***if within 30 days from the date of the attachment or the levy by the sheriff, the debtor elects to exempt cash or selected items of property in an amount not to exceed a cumulative value of $6,000***, except that the cumulative value of cash and property exempted under this item and item (5) of this subsection may not exceed $6,000.

Md. Code Ann., Cts. & Jud. Proc. § 11-504(b)(6) (emphasis added). The associated rule requires the filing of a motion within the thirty-day time period:

> Upon Election of Exemption by Judgment Debtor. By motion filed within 30 days after a levy, the judgment debtor may elect to exempt from execution of the judgment selected items of property or cash not exceeding in amount the cumulative value permitted by law. The motion and any response to the motion may be accompanied by a request for court review

> of the sheriff's appraisal made at the time of the levy. The court shall release from the levy items of cash or property selected by the debtor to the extent required by law.

Md. Rule 2-643(d).

There is no evidence before this Court that Ms. Wyatt-Burrows complied with the requirements of Maryland Rule 2-643(d) by filing a motion within thirty days of the attachment of either the Registry Funds or the Escrowed Funds. The failure to file a timely motion under Maryland Rule 2-643(d) results in a waiver of Ms. Wyatt-Burrows's right to claim the Catch-All Exemption. *See In re Gordon*, 199 B.R. 7, 10 (Bankr. D. Md. 1996) (holding that "in instances where a debtor waives a right to claim a certain exemption, either through a failure to comply with statutory requirements or otherwise, that exemption is not revived by the filing of a bankruptcy petition."). Because Ms. Wyatt-Burrows did not have the right to claim the Catch-All Exemption under Maryland law, she cannot assert that exemption here. "Courts addressing this issue have concluded that a debtor must have a valid state law exemption before such exemption can be asserted in bankruptcy." *Id.* For these reasons, the Court concludes that Ms. Wyatt-Burrows ***may not*** apply the Catch-All Exemption to the Escrowed Funds.

The Court need not address whether Ms. Wyatt-Burrows could have asserted the Personal Property Exemption to the Escrowed Funds, given its decision to disallow the Second Amended Schedule C, because that issue only arises if the Second Amended Schedule C is allowed.

<u>Other Relief Sought by Ms. Wyatt-Burrows</u>

In the Motion to Avoid Liens, Ms. Wyatt-Burrows also seeks to have the balance of both the Registry Funds and the Escrowed Funds returned to her, noting that (1) the chapter 7 trustee has abandoned all non-exempt assets, and (2) Ms. Wyatt-Burrows has received a discharge, thus relieving her of any personal obligation to repay Linkus. These arguments are not properly before

the Court on a motion made pursuant to section 522(f) (or on Linkus' claim objection), which is limited to determining whether, and to what extent, a judicial lien may be avoided as impairing a debtor's exemptions. Whatever balance of the Registry Funds and the Escrowed Funds remains encumbered by Linkus's inchoate liens is subject to the rules and procedures applicable in a chapter 7 bankruptcy case following entry of the chapter 7 trustee's no asset report and the debtor's discharge.

## Conclusion

Based on the record and applicable law, the Court finds that the Second Amended Schedule C should be disallowed, leaving the First Amended Schedule C and the Supplemental Schedule C as operative. Because the First Amended Schedule C's attempt to assert the Catch-All Exemption, in the amount of $480, to the Escrowed Funds is untimely under Maryland law, Ms. Wyatt-Burrows may not claim the Catch-All Exemption. The end result is that Ms. Wyatt-Burrows has valid, applicable Alimony Exemptions in both the Registry Funds and the Escrowed Funds and is therefore entitled to void Linkus's lien as follows: (1) to the extent of $37,500 as to the Registry Funds, which represents the 75% Alimony Exemption; and, (2) to the extent of $20,475 as to the Escrowed Funds, which represents the 75% Alimony Exemption after accounting for Ms. Wyatt-Burrows's settlement with Mr. Burrows. A separate Order follows.

cc:	Counsel for Katherine Wyatt-Burrows – Alan M. Grochal
	Counsel for Linkus Investments, LLC – James C. Olson
	Chapter 7 Trustee – Marc H. Baer

**END OF MEMORANDUM OPINION**